Opinion
 

 CALDECOTT, P. J.
 

 Thomas E. McGue appeals from a judgment denying petition for writ of mandamus. If issued, the writ would have directed respondent Director of the Department of Motor Vehicles (hereinafter DMV) to set aside its decision suspending appellant’s driver’s license for a period of six months pursuant to Vehicle Code section 13353. That section creates an implied consent to a chemical test—blood, breath or urine—on the part of a driver suspected of driving under the influence of intoxicating liquor.
 

 Officer Philip Koyl of the Novato Police Department saw appellant driving southbound on Highway 101 at approximately 40 miles per hour.
 
 *803
 
 Appellant was weaving between lanes, having crossed between lanes four times in approximately one-half mile. He was also weaving within his own lane. When the officer stopped appellant, he noticed a moderate odor of alcoholic beverage emanating from his person. Appellant’s eyes were bloodshot, his speech was slurred, and his balance unsteady. The officer administered some roadside sobriety tests, which appellant failed. The officer then placed appellant under arrest for violation of Vehicle Code section 23102, subdivision (a) (driving a vehicle while under the influence of alcohol). Appellant was advised of the nature of the arrest.
 

 In the police car, while still at the scene of the crime, the officer read appellant the standard implied consent admonition
 
 [1]
 
 pursuant to Vehicle Code section 13353. Appellant stated that he did not understand the warning. At the Marin County Civic Center, the officer advised appellant of his
 
 Miranda
 
 rights, and again read the implied consent warning to him. Appellant indicated that he understood the
 
 Miranda
 
 warnings, but did not understand the implied consent admonition. He stated that he wanted to see an attorney. The officer read from the same preprinted form a third time, at which time appellant stated that he still did not understand and wanted to see an attorney before taking any test. The officer then explained briefly in his own words that a failure to take any of the three chemical tests would result in an automatic suspension of his driver’s license for a period of six months. At that point appellant stated, “Let them take my license.” A second officer explained the section to appellant, and appellant read the printed admonition form himself. He nevertheless insisted on seeing an attorney before submitting to any chemical tests. Appellant never submitted to a chemical test.
 

 A Driver’s License Is Not a Fundamental Right
 

 Appellant contends that the trial court erred by applying the substantial evidence test in reviewing the decision of the DMV to suspend
 
 *804
 
 his driver’s license. Appellant relies upon cases which hold that, if the order of a legislatively created administrative agency (see
 
 James
 
 v.
 
 Dept. of Motor Vehicles
 
 (1968) 267 Cal.App.2d 750, 752 [73 Cal.Rptr. 452]) substantially affects a fundamental vested right, the trial court, in determining under Code of Civil Procedure section 1094.5, whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence.
 
 (Bixby
 
 v.
 
 Pierno
 
 (1971) 4 Cal.3d 130, 143, 144 [93 Cal.Rptr. 234, 481 P.2d 242]; see
 
 Strumsky
 
 v.
 
 San Diego County Employees Retirement Assn.
 
 (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].)
 
 [2]
 
 He argues that a driver’s license is both a vested and a fundamental right, and that a six-month suspension thereof constitutes substantial interference.
 

 The courts must decide on a case-by-case basis whether an administrative decision substantially affects a fundamental vested right. If an administrative decision affects such a right, then a full and independent
 
 judicial
 
 review of that decision is indicated because “[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.”
 
 (Bixby
 
 v.
 
 Pierno, supra,
 
 4 Cal.3d at p. 144.)
 

 We may assume that appellant’s asserted right to drive is vested. (See
 
 James
 
 v.
 
 Dept. of Motor Vehicles, supra,
 
 267 Cal.App.2d at p. 752.) However, there is no merit in his contention that such right is fundamental.
 

 “In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.”
 
 (Bixby
 
 v.
 
 Pierno, supra, 4
 
 Cal.3d at p. 144.) Furthermore, in analyzing the fundamental nature of the right asserted, the courts manifest “slighter sensitivity to the preservation of purely economic privileges,” and have permitted the legislative and executive branches of government to deal with economic and social problems with less judicial interference.
 

 The immediate purpose of Vehicle Code section 13353 is to obtain the best evidence of blood-alcohol content at the time of the arrest of the
 
 *805
 
 person believed to be driving while intoxicated.
 
 (Goodman
 
 v.
 
 Orr
 
 (1971) 19 Cal.App.3d 845, 852 [97 Cal.Rptr. 226].) “The long-range purpose of Section 13353 is to inhibit intoxicated persons from driving on the highways [citations] and thus reduce the carnage and slaughter on California freeways and byways caused by drunk drivers [citations] which ‘now reaches the astounding figures only heard of on the battlefield’ [citations].”
 
 (Anderson
 
 v.
 
 Cozens
 
 (1976) 60 Cal.App.3d 130, 143-144 [131 Cal.Rptr. 256]; see also
 
 Goodman
 
 v.
 
 Orr, supra.)
 

 In weighing the relative importance to individuals in the life situation, we are of the opinion that the public’s interest in strict enforcement of traffic laws designed to eliminate drunken driving far outweighs the right of an individual to drive. (Cf.
 
 Mobil Oil Corp.
 
 v.
 
 Superior Court
 
 (1976) 59 Cal.App.3d 293, 305 [130 Cal.Rptr. 814].) Enforcement of this rule does not effectively deny an individual transportation, not even by private automobile. At most, it puts an economic burden on him by requiring that he use other means of transportation. The resulting expense and inconvenience are not sufficient to raise the right to drive to the stature of a fundamental right.
 
 [3]
 

 Appellant, however, reasons that, as a driver’s license is a necessary prerequisite for operation of a private automobile, loss or suspension thereof constitutes a substantial interference with the fundamental constitutional right of an individual to travel. (See
 
 Kent
 
 v.
 
 Dulles
 
 (1958) 357 U.S. 116, 125-126 [2 L.Ed.2d 1204, 1210, 78 S.Ct. 1113];
 
 Aptheker v. Secretary of State
 
 (1964) 378 U.S. 500, 505-506 [12 L.Ed.2d 992, 996-998, 84 S.Ct. 1659] [right to international travel];
 
 Shapiro
 
 v.
 
 Thompson
 
 (1969) 394 U.S. 618, 630 [22 L.Ed.2d 600, 612-613, 89 S.Ct. 1322] [right to interstate travel].) But, as appellant concedes, the right to travel cases concern themselves solely with the right of an individual to reach a given destination; they do not establish a constitutional right to travel by a particular mode of transportation. As previously noted, suspension of a driver’s license does not prevent an individual from travelling wherever and whenever he chooses. It merely limits his options as to his mode of transportation. Thus the right of an individual to operate a private automobile cannot be equated with the fundamental constitutional right of an individual to travel.
 

 
 *806
 
 For the foregoing reasons, we hold that the trial court properly applied the substantial evidence test in reviewing the decision of the DMV to suspend appellant’s driver’s license.
 

 The Decision of the DMV Is Supported by Substantial Evidence
 

 Appellant maintains that he was confused by the juxtaposition of the implied consent warning (no right to refuse a test, or to have an attorney present prior to or during administration of test) with the
 
 Miranda
 
 admonition (right to refuse interrogation and to have an attorney present at all stages of police interrogation). He therefore contends that his refusal to submit to a chemical test until he had consulted an attorney was not a refusal within the meaning of Vehicle Code section 13353.
 
 [4]
 

 California courts have excused refusals to take a chemical test on the ground of officer-induced confusion resulting from the juxtaposition of the two warnings and the officer’s failure to clarify and explain the difference.
 
 (Rust
 
 v.
 
 Department of Motor Vehicles
 
 (1968) 267 Cal.App.2d
 
 *807
 
 545, 547 [73 Cal.Rptr. 366].) The question of officer-induced confusion is one of fact.
 
 (McDonnell
 
 v.
 
 Department of Motor Vehicles
 
 (1975) 45 Cal.App.3d 653, 658 [119 Cal.Rptr. 804].) When a driver who has been advised of his
 
 Miranda
 
 rights manifests confusion by asserting his alleged right to an attorney, it is incumbent upon the officer to explain that the right does not apply to the decision that he must make concerning the three chemical tests.
 
 (Id.)
 
 However, mere insistence on an attorney because the driver wants to consult one about which test to take does not establish officer-induced confusion. Neither does being too drunk to understand the proffered information or explanation.
 
 (Id.,
 
 at pp. 658-659.) “In determining whether an arrestee’s refusal is the result of confusion, the crucial factor is not the state of the arrestee’s mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test.”
 
 (Cahall
 
 v.
 
 Department of Motor Vehicles
 
 (1971) 16 Cal.App.3d 491, 497 [94 Cal.Rptr. 182].) “There is no requirement ‘that a refusal of the test be “intelligent” in order to trigger the sanction of suspension of the driver’s license.’ ”
 
 (Goodman
 
 v.
 
 Orr, supra,
 
 19 Cal.App.3d 845, 857, quoting
 
 Maxsted
 
 v.
 
 Department of Motor Vehicles
 
 (1971) 14 Cal.App.3d 982, 987 [92 Cal.Rptr. 579].) A review of the administrative record in the instant case reveals substantial evidence to support the decision of the DMV that appellant refused to submit to a chemical test within the meaning of section 13353.
 
 [5]
 
 Appellant was advised of his
 
 Miranda
 
 rights only once. There was no embellishment or overly broad phrasing of
 
 Miranda
 
 which rendered it irreconcilable with the implied consent admonition. (Cf.
 
 Rust
 
 v.
 
 Department of Motor Vehicles, supra,
 
 267 Cal.App.2d at p. 546 [officer advised driver that he had a right to an attorney “beginning at that moment”];
 
 Plumb
 
 v.
 
 Department of Motor Vehicles
 
 (1969) 1 Cal.App.3d 256, 258 [81 Cal.Rptr. 639] [officer said driver “ ‘had a right to counsel . . . present at all stages of the proceedings’ ”].) Appellant manifested confusion by insisting upon an attorney. However, there was no evidence that any police action or statement contributed to whatever confusion may have existed in appellant’s mind. He was advised on three separate occasions that he did not have the right to talk to an attorney or to have an attorney present before stating whether he would submit to a test,
 
 *808
 
 before deciding which test to take, or during the administration of the test; In addition, two officers explained the implied consent admonition in their own words, and allowed appellant to read it for himself. (See
 
 McDonnell
 
 v.
 
 Department of Motor Vehicles, supra,
 
 45 Cal.App.3d at p. 659.)
 

 The judgment is affirmed.
 

 Rattigan, J., and Christian, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied September 20, 1978.
 

 [1]
 

 "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable of completing the test you choose, you must submit to or complete any of the remaining tests or test.”
 

 [2]
 

 If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court’s inquiry will be limited to a determination of whether the findings are supported by substantial evidence in light of the whole record.
 
 (Strumsky
 
 v.
 
 San Diego Employees Retirement Assn., supra,
 
 11 Cal.3d at p. 32.)
 

 [3]
 

 It is significant to note that the right to drive is not a fundamental interest so as to require strict scrutiny of legislation challenged on Fourteenth Amendment equal protection grounds.
 
 (McGlothlen
 
 v.
 
 Department of Motor Vehicles
 
 (1977) 71 Cal.App.3d 1005, 1020-1021 [140 Cal.Rptr. 168];
 
 Department of Motor Vehicles
 
 v.
 
 Superior Court
 
 (1976) 58 Cal.App.3d 936,941-942 [130 Cal.Rptr. 311].)
 

 [4]
 

 Vehicle Code section 13353 provides in relevant part as follows:
 

 “(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.
 

 “The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the tests or test, and he shall be advised the officer that he has such choice.
 

 “Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen.
 

 it
 

 “(b) If any such person refuses the officer’s request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer’s sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).”
 

 [5]
 

 Where the trial court was limited to the substantial evidence test in reviewing the decision of an administrative agency the trial and appellate courts occupy identical positions with respect to the administrative record, and the appellate court must itself review the whole administrative record to determine whether the agency’s decision was supported by substantial evidence.
 
 (Patterson
 
 v.
 
 Central Coast Regional Com.
 
 (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].)