[S.F. No. 24450. Feb. 7, 1983.]

SHARON N. BERLINGHIERI, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Douglas Earl Kirkman for Plaintiff and Appellant.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Susan P. Underwood, Deputy Attorney General, for Defendent and Respondent.

---

**OPINION**

**RICHARDSON, J.**—We establish herein that the "independent judgment" standard (see e.g., *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]) should be used in the judicial review of administrative decisions of the Department of Motor Vehicles (DMV) which suspend a driver's license under Vehicle Code section 13353 (the so-called "implied consent" law; further statutory references are to this code unless otherwise indicated).

On May 15, 1980, plaintiff, a driver/sales person for a business firm, was arrested in Sacramento County for driving under the influence of alcohol (former § 23102, subd. (a); see present § 23152) and for resisting, delaying or obstructing an officer (Pen. Code, § 148). Just prior to her arrest, one of her tires blew out, causing her momentarily to lose control of her car, although the vehicle did not collide with any other object, and no injuries were sustained. Plaintiff's apparent erratic driving was reported to the police and upon arriving at the scene the arresting officer directed plaintiff to perform various sobriety tests. (Plaintiff admitted that she had consumed two beers earlier in the day.) The officer's evaluation of plaintiff's performance of these tests, as poor or failing, was contradicted by plaintiff and two independent witnesses.

The original charges against plaintiff were dismissed after she pleaded guilty to one count of reckless driving. (§ 23103.) Soon thereafter, plaintiff received notice that her driver's license would be suspended for six months, effective June 19, 1980, for an alleged violation of section 13353. After a formal hearing the DMV found that (1) the arresting officer had reasonable cause to believe that plaintiff had been driving a motor vehicle while under the influence of intoxicating liquor, (2) she was lawfully arrested, (3) at the scene of the arrest she was properly advised that her driving privileges would be suspended if she refused to submit to a blood alcohol test and (4) she failed to submit to any of the prescribed tests.

Plaintiff filed a petition for writ of mandate in superior court seeking judicial review of the DMV's decision on the ground that the DMV's findings were not supported by the evidence presented at the hearing. The trial court issued an alternative writ of mandate, set a hearing date and stayed enforcement of the license revocation pending a ruling on the petition.

The trial court thereafter rejected petitioner's request that the "independent judgment" standard of review be applied and, using the "substantial evidence" test, found that the administrative findings and decision were properly supported and denied relief.

On appeal, the plaintiff challenges (1) the sufficiency of the evidence presented to support the DMV's decision and (2) the trial court's decision to apply the "substantial evidence" test, instead of the "independent judgment" standard of review.

## DISCUSSION

Code of Civil Procedure section 1094.5, subdivision (c), provides: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

We have added our own judicial amplification to these statutory principles. ■ If the decision of an administrative agency will substantially affect a "fundamental vested right," then the trial court must not only examine the administrative record for errors of law, but also must exercise its independent judgment upon the evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143.) ■ When the administrative decision neither involves nor substantially affects such a right, then the trial court must review the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law. (*Bixby, supra,* at p. 144.)

Subsequently in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29], referring to *Bixby*, "we explained the considerations which counsel in favor of fuller judicial review in cases involving vested, fundamental rights. The essence to be distilled is this: When an administrative decision affects a right which has been *legitimately acquired* or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated because '[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' ([*Bixby*] at p. 144.)" (First italics added.)

Within the foregoing guidelines, where lies the "right" to drive an automobile?

■ The term "vested" denotes a right that is either "already possessed" (*Bixby, supra,* 4 Cal.3d at p. 146) or "legitimately acquired" (*Strumsky, supra,* 11 Cal.3d at p. 34). Business or professional licensing cases have distinguished between the denial of an application for a license (nonvested right) and the suspension or revocation of an existing license (vested right). (See, e.g., *Frink v. Prod* (1982) 31 Cal.3d 166, 175 [181 Cal.Rptr. 893, 643 P.2d 476].) Once an agency has exercised its expertise and issued a license, the agency's subsequent revocation of that license generally calls for an independent review of the facts, because the revocation or suspension affects a vested right. (*Ibid.; Harlow v. Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698]; *Bixby, supra,* 4 Cal.3d at p. 146.)

■ Whether or not retention of a driver's license once issued constitutes a "fundamental" right, it uniformly has been held to be "vested." (See *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70, 83 [177 Cal.Rptr. 566, 634 P.2d 917]; *Thompson v. Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 357, fn. 1 [165 Cal.Rptr. 626]; *Buchanan v. Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 298, fn. 3 [160 Cal.Rptr. 557]; *McConville v. Alexis* (1979) 97 Cal.App.3d 593, 599 [159 Cal.Rptr. 49]; *Thomas v. Department of Motor Vehicles* (1979) 97 Cal.App.3d 12, 15, fn. 3 [158 Cal.Rptr. 506]; *McGue v. Sillas* (1978) 82 Cal.App.3d 799, 804 [147 Cal.Rptr. 354]; *James v. Department of Motor Vehicles* (1968) 267 Cal.App.2d 750, 754 [73 Cal.Rptr. 452].)

Is the right to retain a driver's license a "fundamental" right, in the *Bixby-Strumsky* context? The appellate courts have reached differing conclusions on this point. (Cf. *McGue v. Sillas,* and *McConville v. Alexis,* both *supra.*) Recently, in *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], we suggested the answer. We there considered a claim that the right to drive is a "fundamental constitutional right" under the California Constitution, requiring "strict scrutiny" review for purposes of substantive due process analysis. Rejecting that contention, we concluded, "We may assume without deciding that the loss of a driver's license does implicate interests sufficiently important to 'the individual in the life situation' to warrant *independent review of a quasi-judicial administrative decision* suspending or terminating such right. It does not follow, however, that legislative measures regulating or limiting the possession of a driver's license are subject to strict judicial scrutiny." (P. 83.) We then stressed an important distinction. "As both *Bixby* and *Strumsky* explain, the standard of review question with which those cases deal relates to the appropriate relationship between *administrative* and *judicial* adjudicatory decisions, and does not concern the constitutional legitimacy or validity of legislative policy judgments at all. Thus, under *Bixby-Strumsky,* the 'fundamental right' category does not identify areas in which substantive legislative judgments are in any manner constitutionally

suspect or justify unusual judicial scrutiny; rather, that category simply encompasses those quasi-judicial administrative decisions that have 'an impact on the individual "sufficiently vital . . . to compel a full and independent review" by the court.' (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 779 [163 Cal.Rptr. 619, 608 P.2d 707].) [¶] Indeed, even a cursory review of the *Bixby-Strumsky* line of decisions makes it abundantly clear that the applicability of the independent judgment standard of review does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review." (*Ibid.*)

We reaffirm the foregoing distinction and emphasize that we view the "right to drive" herein as important, indeed "fundamental" for purposes of selecting the standard of judicial review of the administrative decision to suspend the driver's license. However, we expressly do not thereby invoke strict scrutiny review of the legislative enactment of section 13353 itself, and caution against any blurring of two separate and distinct senses in which the term "fundamental" is used.

There is little similarity between the analysis applied in determining (1) whether a right is a "fundamental right" for equal protection/due process purposes on the one hand, and (2) which scrutiny is applicable for administrative review purposes, on the other. The principle of "fundamentality" differs depending on the context or analysis within which the concept arises. Thus, for example, when determining which rights are "fundamental" for due process purposes, a court's attention focuses primarily on whether the right (1) is specifically guaranteed by the Constitution, (2) affects the integrity of the political process, or (3) has a disproportionate impact upon a discrete and insular minority. (*U.S.* v. *Carolene Products Co.* (1938) 304 U.S. 144, 152-153, fn. 4 [82 L.Ed. 1234, 1241, 1242, 58 S.Ct. 778].)

Obviously, the foregoing *Carolene Products* test bears little relation to the standard used when determining which rights are "fundamental" under the *Bixby* rule for administrative review purposes. In this latter situation, we examine a right or interest to see if it is important enough "to individuals in their life situations" to require an independent judicial review of the evidence. We are here more concerned with the personal nature of the interest than with its constitutional basis or its specific impact on a particular segment of society. These interests and rights do not need to be "fundamental" in the *Carolene Products* sense in order to invoke judicial protection.

Thus, the fact that retention of a driver's license does not rise to the level of a fundamental right for purposes of discussing due process or equal protection of the law is not conclusive in the resolution of the present case. As a practical matter, continued retention of her driver's license clearly is of substantial im-

portance to plaintiff herein, in her own life situation. As the court said in *McConville* v. *Alexis, supra,* 97 Cal.App.3d at page 600 "there can be little question but that possession of a driver's license rises to the level of a fundamental right under *Bixby* in terms of both the economic implications relating thereto and 'the importance of' the possession 'to the individual in the life situation.' (*Bixby, supra,* 4 Cal.3d 130, 144.) This, of course, is most obviously true with respect to those individuals whose occupations depend directly on the ability to drive, such as truck drivers or delivery persons."

In our present travel-oriented society, the retention of a driver's license is an important right to every person who has obtained such a license. (See *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d 70, 74.) While we might agree with defendant's observation that there exist alternative means of transportation, the reality of contemporary society is that public transportation systems may not meet the needs of many travelers and other forms of transportation, such as taxicabs, are not economically feasible for a large portion of the population.

Whether a driver's license is required only for delivering bread, commuting to work, transporting children or the elderly, meeting medical appointments, attending social or political functions, or any combination of these or other purposes, the revocation or suspension of that license, even for a six-month period, can and often does constitute a severe personal and economic hardship. (See *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586] [as continued possession of a license *may become* essential in the pursuit of a livelihood, any adjudication would involve an "important" interest of the licensee].)

For plaintiff, as a route driver, her ability to drive a delivery truck affects her very livelihood and the suspension of her license obviously will affect her directly, immediately, and adversely. Further, as a single working parent, she is faced with the numerous responsibilities of child rearing, many of which necessitate a speedy and reliable means of transportation. The suspension of plaintiff's license, even for only six months, may have profound and obvious effects on her "life situation" and thus, in the *Bixby-Strumsky-Interstate Brands* sense, constitutes "quasi-judicial" administrative decisions that have an impact on the individual "sufficiently vital . . . to compel full and independent review" by the court. (*Interstate Brands, supra,* 26 Cal.3d at p. 779.)

A driver's license is a fundamental right for the purpose of selecting the standard of judicial review of an administrative decision to suspend or revoke such license. In the matter before us, suspension of plaintiff's driver's license may be entirely appropriate, but it should be ordered only after the administrative record receives that "independent judgment review."

In view of our disposition of this case, it is unnecessary to reach plaintiff's additional contentions on appeal. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Newsom, J.,* and Franson, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.