Filed 1/28/15  Lewis v. Shiomoto CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HARRISON ALLEN LEWIS,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JEAN SHIOMOTO, as Chief Deputy Director, etc.,<br><br>  Defendant and Appellant. | G049264<br><br>(Super. Ct. No. 30-2012-00614083)<br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Michael E. Whitaker and Ernesto J. Fong, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Chad R. Maddox and Chad R. Maddox, for Plaintiff and Respondent.

\*          \*          \*

The Department of Motor Vehicles (DMV) appeals the trial court's entry of judgment granting Harrison Allen Lewis's petition for a writ of mandate compelling the DMV to set aside its suspension of Lewis's driver's license. The DMV suspended Lewis's license for driving with a blood-alcohol concentration (BAC) at or above 0.08 percent. (Veh. Code, § 13353.2.) The trial court found expert testimony and a sequence of tests showing Lewis's blood alcohol level continued to rise after officers stopped Lewis's vehicle rebutted the statutory presumption that a person's BAC test results of 0.08 percent or more establish his or her BAC was at least that high when the person was driving, if the test is administered within three hours of when the person drove the vehicle. (Veh. Code, § 23152, subd. (b); all further undesignated statutory references are to this code.) The trial court found on the evidence presented that the upward trend in Lewis's BAC after an initial test result of 0.084 percent 25 minutes after he was stopped made it likely his BAC was below 0.08 percent when he was driving, and therefore the DMV lacked a basis to suspend his license for driving with a BAC at or above 0.08 percent. The DMV challenges the sufficiency of the evidence to support the trial court's conclusion the statutory presumption was rebutted, and argues that circumstantial evidence in conjunction with the BAC test results established Lewis's BAC was above the legal limit when he was driving. Substantial evidence supports the trial court's factual determination, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, an officer stopped Lewis for speeding and for drifting outside of his lane. Upon making contact, the officer noted a strong odor of alcohol and observed objective signs of intoxication such as red watery eyes. Lewis admitted he had consumed two gin and tonic drinks before driving. The officer requested an additional unit to conduct a driving under the influence (DUI) investigation. Lewis performed poorly on a series of field sobriety tests before he agreed to undergo a preliminary

alcohol screening (PAS) test, and to provide breath and blood samples for chemical testing.

The first PAS test — administered 25 minutes after police initially pulled Lewis over — registered a BAC of 0.084 percent, and the second reading two minutes later returned a 0.082 percent BAC reading.  Six minutes after the second PAS test, Lewis submitted to a chemical breath test.  The first reading disclosed a BAC result of 0.091 percent, and the second test, three minutes later, yielded a 0.088 percent BAC result.  A technician drew Lewis's blood an hour and 16 minutes after he was stopped, and forensic analysis of the sample later showed a BAC of 0.094 percent.

Lewis's BAC test figures greater than 0.08 percent resulted in a per se license suspension order.  (§ 13353.2, subd. (a)(1).)  Lewis obtained a stay, pending an administrative hearing to challenge the suspension.

At the hearing, Lewis relied on the BAC test results and the expert testimony of a forensic alcohol analyst, Darrell Clardy, in support of a rising BAC defense.  Clardy's expertise included experience as a supervising criminalist and forensic alcohol supervisor at the Orange County Sheriff's Department, authorship of numerous publications on forensic alcohol analysis, and testimony in more than 2,000 court cases and more than 500 DMV proceedings on forensic alcohol matters.

Clardy opined that Lewis's BAC at the time he was driving was "no higher than a .07.  In reality, he's probably below that."  Clardy explained his reasoning as follows:  "[W]e have the PAS results of an .084 and .082.  And that's at 25 and 27 minutes after driving.  And then at 33 and 36 minutes after driving, we are at a .091 and a .088.  So in approximately ten minutes we're going up from an .082 to almost .092, almost a .01 increase over that period of time.  With that rate of absorption, which would be — since these are both breath results — that'd be consistent with the rate of absorption that's happening closest to the time of driving.  And that means that he would be — and ten minutes earlier he would drop an .01 and then another ten minutes he dropped [an

3

additional] .01.  So it'd actually be about a .05 at the time of driving, based on the measured breath results."

Clardy also explained it is widely accepted in the scientific community that when a person is in the absorptive stage (i.e., that the person's alcohol content is still going up), breath tests read higher than actual blood-alcohol content, so Lewis's early BAC test results of 0.084 and 0.082 percent meant his BAC at the time of driving was likely below 0.08 percent.  Clardy explained that "[t]he definition of absorption is that the alcohol level is increasing as time goes on.  We have the first breath result of an .082 and an .084.  It goes up — it increases to a .088 and a .091.  It then increases to a .094 blood.  So the level is increasing as time goes on.  Measured results define absorption because the alcohol level is getting higher as time goes on."  The DMV offered no expert testimony of its own and did not probe or contest the foundation for Clardy's opinions.  The DMV hearing officer appeared to misapprehend a declining trend in the results, questioning Clardy whether because the final blood test "has a result of .09" and "the [earlier] breath is .08," that might "suggest . . . that this person could also be in the elimination phase?"  Clardy explained, "No.  The results are always increasing, so I don't see elimination happening here."

Clardy discounted Lewis's driving pattern and other circumstantial factors because "driving pattern doesn't answer if he's absorbing alcohol or not."  Instead, he based his opinion "on the actual measurements of breath and the blood over time," which "tell me that the alcohol level was increasing" and that "we definitely have absorption going on after the stop."  Clardy concluded that "[w]ith these measured results," it was not "reasonably possible that [Lewis's BAC] was .08 or more at the time of driving."

The DMV hearing officer labeled Clardy's testimony "subjective," concluding the BAC test results and circumstantial evidence established Lewis's BAC was 0.08 percent or higher before he was stopped.  The DMV entered a per se order

4

suspending Lewis's license, which he challenged with a petition for a writ of mandate to overturn the suspension. The trial court granted the petition, and the DMV now appeals.

## II

### DISCUSSION

#### A. *Timeliness*

Lewis contends the DMV's appeal is untimely because it followed more than 60 days after the trial court's clerk gave notice of entry of the judgment in the form of a minute order rejecting DMV's arguments against the writ petition. Lewis argues that the minute order constituted a judgment because it finally determined the rights of the parties to and against a writ, respectively. Lewis relies on the observation in *Mellinger v. Municipal Court* (1968) 265 Cal.App.2d 843, 845, that *denying* a writ petition is "a 'judgment' rather than [an] 'order' because of the terms of section 1064 Code of Civil Procedure: 'A judgment in a special proceeding is the final determination of the rights of the parties therein.'" We are not persuaded.

California Rules of Court, rule 8.104(a) explains the requisite time in which to file an appeal is the earliest of: 60 days after the court clerk's "'Notice of Entry' of judgment" or service of a file-stamped copy of the judgment; 60 days after a party serves either of those documents; or 180 days after entry of judgment.

Here, the court clerk gave notice on July 31, 2013, of the trial court's minute order *not* by "Notice of Entry" of a judgment or service of a *file-stamped* copy of the minute order, but rather by completing a "Clerk's Certificate of Service by Mail." The trial court subsequently entered a judgment on August 29, 2013. Then Lewis on September 10, 2013, served DMV by mail with a "Notice of Entry of Judgment." DMV filed its appeal on November 5, 2013, within 60 days of Lewis's notice. The appeal is timely.

*Hughey v. City of Hayward* (1994) 24 Cal.App.4th 206, 210 (*Hughey*), which neither party cites, is dispositive. There, as here, "[t]he superior court clerk mailed

5

the parties a copy of the minute order, but that mailing did not commence the 60-day appeal period, because the document was not entitled 'notice of entry' and was not file-stamped. . . . Thus, the operative appeal period is 180 days after the date of entry." As another court explained concerning similar guidelines for appeals to the appellate division of the superior court, even a "notice of ruling" is not sufficient to constitute the requisite "notice of entry" of the judgment. (*20th Century Ins. Co. v. Superior Court* (1994) 28 Cal.App.4th 666, 671-672.) The court observed: "It might seem that the difference between a 'notice of ruling' and a 'notice of entry' is hypertechnical. In another context it might be." (*Id.* at p. 672.) But "[s]ince the time within which an appeal must be filed is jurisdictional, rules that measure that time must stand by themselves without embroidery." (*Ibid.*)

Here, as in *Hughey*, the clerk did not give "Notice of Entry" of a judgment or serve a file-stamped copy of the judgment, but rather served the DMV only with a Clerk's Certificate of Service by Mail with the minute order attached. This did not suffice to trigger the 60-day period in which to appeal, which arose only after Lewis gave notice of entry of the judgment. DMV timely filed its appeal within 60 days of that notice. We therefore turn to the merits.

B.    *Standard of Review*

In a mandate proceeding, the trial court exercises "'independent judgment review'" of the administrative record. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 (*Berlinghieri*).) The trial court reviews the proceeding to determine whether the DMV acted arbitrarily or capriciously, exceeded its constitutional or statutory authority, erred in interpreting the law, or made findings unsupported by the evidence. (*Ibid.*) In the mandate proceedings, the trial court affords the administrative proceedings a strong presumption of correctness, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence. (*Fukuda v. City of Angels* (1999)

6

20 Cal.4th 805, 817.)  The presumption "provides the trial court with a starting point for review — but it is only a presumption, and may be overcome."  (*Id*. at p. 818.)

On appeal from a writ of mandate, we in turn defer to the trial court's review.  (*Lake v. Reed* (1997) 16 Cal.4th 448, 456.)  We """"must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision.  [Citation.]"  [Citations.]'"  (*Id.* at p. 457.)  We review the record only to determine whether the trial court's findings are supported by substantial evidence, and where the evidence supports more than one inference, we may not substitute our deductions or conclusions for the trial court's.  (*Ibid.*)

C.      *The Trial Court Reasonably Could Conclude Lewis Rebutted the Statutory Presumption*

The DMV contends the trial court erred in concluding Lewis rebutted the statutory presumption that the BAC tests administered within three hours of driving established that his BAC was 0.08 or higher at the time he drove.  (Veh. Code, § 23152, subd. (b); *Bell v. Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 311 [presumption applies in administrative proceedings].)  The DMV frankly concedes its appeal turns on the weight of Lewis's expert's testimony to rebut the presumption, but as noted at the outset, the standard of review forestalls this attack.  (*Berlinghieri*, *supra*, 33 Cal.3d at p. 398.)  To obscure this core defect, the DMV mounts a host of challenges to Clardy's testimony, but none has merit.

First, the DMV contends that because Clardy did not examine Lewis physically or factor into his analysis such factors as "Lewis'[s] weight, what he ate or the amount of food he ate, or whether Lewis is a heavy or light drinker for purposes of Lewis'[s] actual rate of absorption," Clardy's "opinion is speculative at best."  The DMV, however, does not suggest how these factors would have made a difference, having declined to present its own expert testimony at the administrative hearing.

7

Additionally, the thrust of the DMV's challenge is misplaced. The DMV appears to take issue with Clardy's conclusion Lewis's BAC may have been as low as 0.05 percent, based on a rate of absorption of 0.01 percent suggested by Lewis's breath test results. But the DMV's challenge is misguided because Lewis did not have to establish his exact BAC, nor any particular rate of absorption. Rather, Lewis's objective was simply to establish his BAC was below the 0.08 percent DMV was required to show to suspend his license. (*Baker v. Gourley* (2002) 98 Cal.App.4th 1263, 1273 [observing per se suspension is "wholly pegged to a given blood-alcohol level"].) Thus, it was enough for Lewis to present evidence his BAC was below 0.08 percent, and we may not second-guess the trial court conclusion the DMV failed to undermine this evidence.

Second, again challenging Clardy's rate of absorption estimate of 0.01 percent every ten minutes, the DMV contends Clardy's calculation is mathematically flawed. But the DMV sets up a straw man by misstating Clardy's analysis. The DMV suggests Clardy reached a rate of 0.01 percent BAC absorption every ten minutes by noting at least a 0.01 percent BAC increase between Lewis's PAS test result of 0.082 percent at 12:19 a.m. and his .094 percent BAC blood draw result at 1:08 a.m. The DMV contends Clardy's analysis is flawed because almost an hour separates those two test times, not 10 minutes, and therefore Clardy's estimate of a 0.01 percent BAC increase or rate of absorption rate every 10 minutes is demonstrably erroneous. But Clardy did not base his estimate on the hour-long period the DMV identifies on appeal.

Instead, as he stated explicitly in his testimony, he derived the rate of increase from Lewis's second PAS test BAC result of 0.082 at "27 minutes after driving" and his first chemical breath test result of 0.091 BAC at "36 minutes after driving," as reflected in the police department's alcohol sensor logs. As Clardy observed, that is "*almost* a .01 increase" in *less than 10 minutes*. (Italics added.) There is nothing

8

mathematically incorrect in Clardy's calculation, and misstating his analysis on appeal does not aid the DMV.

Third, the DMV contends the trial court "erred in assessing the flawed rate of progression in Dr. Clardy's analysis." The DMV suggests Clardy erroneously assumed that Lewis's "BAC increase[d] from the first test to the last test." The DMV implies Clardy and the trial court both mistakenly understood the increase was inexorable, increasing in each and every one of Lewis's six BAC tests in the hour and 16 minutes after he was stopped. Nothing supports this slanted reading of Clardy's testimony or the trial court's ruling, to which we must defer under the standard of review.

The DMV argues that the trial court's minute order demonstrates it erred by "misreading material evidence in the record." Specifically, the trial court noted in its minute order that "the key is in the second set of tests showing results of 0.088 and 0.091. Clearly, the trend demonstrated by the sequence of the tests shows a blood alcohol level on the rise." The DMV attacks the trial court's reasoning by observing that the 0.091 percent BAC reading was at 12:25 a.m., followed by the 0.088 percent reading at 12:28 a.m., "which shows a downward progression rather upward." The DMV insists this shows the trial court "did not read the time sequence of the breath chemical tests properly," but the DMV again misconstrues the record.

The DMV fails to present the full context of the trial court's minute order. In the order, the trial court first observes that the DMV "points to the nominal difference between the first two tests (0.084 versus 0.082) in an attempt to demonstrate that petitioner's BAC was not rising continuously and therefore could not have been in the absorptive phase." Then, the trial court explains it did not find the DMV's observation about nominal initial PAS test differences persuasive precisely because the "key is in the second set of tests showing results of .088 and .091." We do not read in the trial court's sequencing of 0.088 and 0.091 an implied intent to recite those numbers in the chronological order of the tests that yielded those results, but rather a refutation of the

9

DMV's focus on the minutiae of nominal test result differences against the weight of the evidence showing an upward trend in Lewis's BAC test results. The trend was unmistakable across three categories of testing: 0.084 and 0.082 in the initial PAS tests; 0.091 and 0.088 in the chemical breath tests, and 0.094 and 0.094 in the blood tests. Substantial evidence amply supports the trial court's identification of the middle numbers as "key" in demonstrating the upward trend. Given the appellate duty to recite the record accurately in the light most favorable to the judgment, the DMV's attempt to construct "gotcha" arguments by misconstruing the trial court's minute order and Clardy's reasoning is badly misplaced.

Fourth, the DMV argues Clardy's testimony was flawed because it was "based on test readings that include a Preliminary Alcohol Screening ('PAS') test, which should not be the case." The DMV offers no authority for its definitive statement that PAS results are barred as foundation for expert testimony. To the contrary, experts may rely on and testify to the sources on which they base their opinions (Evid. Code, §§ 801, 802), including hearsay reasonably relied on by experts in their field. (Evid. Code, § 801, subd. (b); *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 294.) Clardy explained it is commonly accepted in the field of forensic alcohol analysis that at best PAS tests may *overstate* BAC, thus lending additional support to his rising BAC opinion. The evidence showed Clardy was an expert familiar with the forensic alcohol community, including numerous publications in its journals, and because the DMV made no objection or effort to attack the foundation for his opinion, it is competent evidence to support the judgment. (E.g., *Flood v. Simpson* (1975) 45 Cal.App.3d 644, 649 [evidence is competent to support judgment absent objection below].)

In mounting an attack on appeal on the PAS tests as a preliminary BAC indicator, the DMV merely notes PAS tests are "not a required chemical test under the Vehicle Code," citing Vehicle Code section 23612, subdivisions (h) and (i), which

10

describe PAS tests, in the DMV's characterization, as "only a field sobriety test" because the driver "must still submit to a 'blood, breath, or urine test.'" The DMV did not offer expert testimony of its own or dispute that PAS tests may show rising or declining BAC. Indeed, the DMV relied on the PAS tests here to assert they showed a declining BAC, albeit nominally from 0.084 to 0.082 in the initial PAS tests. In any event, neither Clardy nor the trial court relied solely on the PAS tests. As the trial court noted, the chemical breath tests were "key" independent evidence showing a rising trend in Lewis's BAC, whether viewed in conjunction with the PAS tests or the subsequent blood tests. Measured against the "key" breath tests, the evidence amply supported the trial court's ruling.

Fifth, the DMV asserts an expert's unsubstantiated opinion in *Borger v. Department of Motor Vehicles* (2011) 192 Cal.App.4th 1118 (*Borger*) requires the conclusion Clardy's testimony did not support the judgment. There, the trial court based its conclusion the driver did not have at least a 0.08 percent BAC on the expert's testimony that chemical breath test machines have a significant "inherent" margin of error of 0.02 percent. (*Id.* at p. 1121.) The expert's sole foundation for this asserted figure was his personal experience with a breathalyzer he owned, without any basis in rigorous testing or support from the scientific community. (*Id.* at p. 1122.) The appellate court rejected the evidence as speculative and insubstantial, but the same is not true here. As an initial point of distinction, unlike the expert in *Borger*, Clardy identified a consensus in the scientific community that initial PAS tests overstate BAC. That the DMV did not probe Clardy's statement does not mean it lacked foundation; his own testimony noted the scientific consensus.

In any event, ample evidence supported the judgment apart from Clardy's testimony concerning inflated PAS results. Clardy relied on the *same* BAC results as the DMV, but explained they showed a rising trend of alcohol absorption that meant Lewis's actual BAC at the time of driving was lower. Given his initial breath test results were so

11

close to the 0.08 percent threshold, and only continued to rise as demonstrated by the subsequent chemical breath and blood tests, the trial court reasonably could conclude the evidence did not show DMV had met its burden to establish Lewis's BAC was 0.08 percent or higher when he was driving. While Clardy also explained the scientific community generally regards PAS tests as overstating BAC, this was simply additional evidence supporting his conclusion Lewis's initial test results of 0.084 percent and 0.082 percent meant his BAC was below the legal threshold. As noted, the rising trend in Lewis's BAC across all three types of tests independently supported the trial court's judgment. Substantial evidence supports the trial court's conclusion Lewis rebutted the statutory presumption.

D.      *Circumstantial Evidence Does Not Establish Lewis's BAC Exceeded the Limit*

The DMV argues that "[e]ven if the three-hour presumption is rebutted and the burden shifts [to the DMV to show Lewis's BAC was above the legal limit], the DMV *can* still show that Lewis was driving above the legal limit through circumstantial evidence and by the chemical tests' results." (Italics added.) The DMV acknowledges that circumstantial evidence *without* a valid BAC test result is insufficient to establish the BAC necessary to suspend a motorist's license. (*Baker v. Gourley*, *supra*, 98 Cal.App.4th at p. 1273 ["After all, the usual symptoms of substantive intoxication — slurred speech, bloodshot eyes, etcetera — can manifest themselves at a blood-alcohol level *below* .08"].) But in arguing circumstantial evidence *may* lend support to the conclusion particular BAC test results are accurate because the motorist's behavior is typical or commensurate with a high BAC, DMV simply misunderstands the standard of review. The issue is not whether circumstantial evidence *can* help support a high BAC determination, but whether the evidence supports the judgment the trial court actually reached. The DMV does not suggest circumstantial evidence *requires* the conclusion Lewis's BAC exceeded the legal limit. We may not assume as the DMV suggests that

12

the trial court erroneously failed to even consider the circumstantial evidence; rather, we must presume the trial court simply found it unpersuasive.  Viewing the evidence in light of the standard of review, the trial court reasonably could conclude the evidence failed to establish Lewis's BAC exceeded the legal limit.  Mandate was therefore proper.

## III

### DISPOSITION

The judgment is affirmed.  Lewis is entitled to his costs on appeal.

ARONSON, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

IKOLA, J.

13