[No. F006566. Fifth Dist., Jan. 9, 1987.]

BRUCE WOOD MEDINA, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Thomason, Roberts & Channell and Hal B. Channell for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Paul H. Dobson and Denise Eaton, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Appellant was notified by respondent that his driving privileges were to be suspended for six months. The basis for the suspension was appellant's refusal to submit to a chemical test pursuant to Vehicle Code section 13353 after he had been arrested for driving under the influence of alcohol in violation of Vehicle Code section 23152. Appellant requested an administrative hearing prior to the effective date of the suspension, and a hearing was held. The referee affirmed the suspension.

Appellant then filed a petition for writ of administrative mandamus in the superior court. After independently reviewing the administrative record, the superior court denied the writ. We reverse.

The administrative record shows the following facts. In the early hours of January 6, 1985, Tuolumne County Deputy Sheriff Karen Moser, patrolling Soulsbyville Road, overheard radio transmissions from a Sergeant Murphy, who was in pursuit of a motorcycle traveling in excess of 90 miles per hour. Moser then observed a motorcycle turn from Highway 108 onto Soulsbyville Road and pull to the side of the road; Moser executed a U-turn and stopped her car near where the motorcycle had stopped. Moser radioed Sergeant Murphy that she had stopped the subject of his pursuit. Moser approached appellant, who was alone on the motorcycle, and requested identification; appellant said he had none. Moser detected the odor of alcohol. She stayed at the scene until a California Highway Patrol officer arrived and arrested appellant some 20 minutes later for driving under the influence (Veh. Code, § 23152).

Moser was certain that, at the time the motorcycle turned onto Soulsbyville Road, it had only one rider. She made the observation from a distance of about 50 yards; she said the motorcycle was traveling through an intersection that had several lights. Moser saw only appellant when she arrived at the place where the motorcycle had stopped.

California Highway Patrol Officer Dennis Slack responded to the scene of the stop on Soulsbyville Road near Highway 108. According to Officer Slack the area "does not have much lighting" and is surrounded "by bushes and foliage." There is a "slight incline ... approaching Highway 108 on Soulsbyville Road." Slack was told by Sergeant Murphy who had already arrived at the scene that Murphy had observed the motorcycle traveling with its lights out at speeds in excess of 90 miles per hour. Murphy explained that due to the observed traffic violations, appellant's unsteadiness on his feet

and the odor of alcohol, Murphy felt appellant might have been a drinking driver; it is standard procedure for the sheriffs to call in the highway patrol to make the arrest in such cases.

Slack approached appellant, who refused to take a field sobriety test. Slack noted the odor and unsteadiness earlier observed by the sheriff's department personnel, and feeling that appellant was "obviously intoxicated," arrested him for violating Vehicle Code section 23152.

Slack informed appellant at the time of arrest that he would be required to take a chemical test. Appellant refused. At the Tuolumne County jail, appellant again refused to take a chemical test, although he was warned by Slack that the refusal would lead to the suspension of his driving privileges and that the refusal could be used against him in court.

Appellant's version of events was different. Appellant maintains he was not driving the motorcycle. Appellant claims that Sergeant Murphy was watching him at the Twain Harte Lodge that night. Appellant telephoned a friend, Charlie Fields, who got a lift to the bar and proceeded to drive appellant away on appellant's motorcycle. When Fields stopped the bike to wait for two friends of appellant's, appellant saw Sheriff Moser's car and told Fields to run and hide, apparently because appellant was afraid the police would hurt Fields. Fields and several other witnesses corroborated appellant's story. Appellant did not tell his story to the officers at the scene or after his arrest.

## DISCUSSION

█  The court below properly exercised its independent judgment in reviewing the administrative decision of the Department of Motor Vehicles. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383].) Consequently, this court must examine the trial court's findings to determine whether they are supported by substantial evidence. (See, e.g., *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].)

█  Although the superior court's findings are supported by the evidence, they do not authorize a license suspension. To appreciate the defect in the findings, we should first examine the findings of the referee—the first four of which were confirmed by the superior court: "1. The officer had reasonable cause to believe that Bruce Wood Medina had been driving a motor vehicle in violation of Section 23152 or 23153 of the Vehicle Code.

"2. Mr. Medina was lawfully arrested.

"3. Mr. Medina was told that his driving privilege would be suspended 6 months if he refused to submit to or failed to complete a chemical test of the alcoholic content of his blood.

"4. Mr. Medina refused to submit to or failed to complete a test of his blood, breath, or urine to determine the alcoholic content of his blood after being requested to do so by a peace officer.

"5. *Mr. Medina was driving a motor vehicle.*" (Italics added.)

The first four of these findings, the four affirmed by the trial court, were expressly required by Vehicle Code section 13353, subdivisions (b) and (c)(1) as a condition to suspending a licensee's driving privilege.[1] The fifth finding, that appellant was driving a motor vehicle, was not expressly required as a condition of suspending a driving privilege.

---

[1]Vehicle Code section 13353, subdivisions (b) and (c) as they read at the time of appellant's arrest provided in pertinent part: "(b) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall (1) suspend the person's privilege to operate a motor vehicle for a period of six months, (2) suspend the person's privilege to operate a motor vehicle for a period of one year if the person has previously been convicted of a violation of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal, or (3) revoke the person's privilege to operate a motor vehicle for a period of three years if the person has previously been convicted of two or more violations of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal. The officer's sworn statement shall be submitted on a form furnished or approved by the department. The suspension or revocation shall not become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).

"(c)(1) The department shall immediately notify the person in writing of the action taken and, upon the person's request in writing and within 15 days from the date of receipt of that request, shall grant the person an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3, except as otherwise provided in this section. *For purposes of this section, the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153, whether the person was placed under arrest, whether the person refused to submit to, or did not complete, the test or tests after being requested by a peace officer, and whether,* except for the persons described in subdivision (a) who are incapable of refusing, *the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the test or tests.*" (Italics added.)

All statutory references are to the Vehicle Code unless otherwise noted.

There is substantial evidence to support the court's findings one through four; however, only finding one need be discussed at this point. Regardless of whether appellant was actually driving the motorcycle (fifth finding), the evidence supports a finding that the officers had reasonable cause to believe that he was. Deputy Moser initially observed only one rider on the bike, and found only appellant where the bike was stopped. While appellant was silent as to whether he had been driving the motorcycle (he was never asked this question by the officers) and assuming his silence could not be used as evidence against him in a section 23152 prosecution, we see no reason why his failure to tell the officer that he was not the driver cannot be considered in evaluating the arresting officer's perceptions concerning reasonable cause to believe that appellant had been driving the motorcycle. As we shall explain, this is what the superior court concluded when it reviewed the evidence.

The problem is the fifth finding. The trial court ruled that the referee's finding that appellant was *actually driving* a motor vehicle was not proven by a preponderance of the evidence. In reaching this conclusion, the court reasoned that appellant's testimony was not "inherently unbelievable" and that it was "physically questionable as to whether or not Deputy Moser was able to keep constant surveillance of [appellant] after having passed her going in the opposite direction and execute [*sic*] a u-turn within the two lane road described in the scene."[2] The court nonetheless held that the suspension of appellant's license should be upheld because "[appellant's] silence on [the fact he was not driving] at the time of the stop under all of the circumstances *warranted the findings of Nos. 1 through 4.*" (Italics added.) Thus it is clear that because the judge decided that the evidence supported a finding of reasonable cause to believe that appellant was the driver of the motorcycle, the judge would uphold the license suspension even though he also believed that the department had not proved that appellant was actually driving the motorcycle.

Although section 13353, subdivision (c)(1) (see fn. 1, *ante,* p. 748, as the statute read in 1985) did not call for the referee to make a finding that appellant was actually driving, the implied consent statute in then subdivision

---

[2]As improbable as it may seem, the evidence supports the court's implied finding that appellant may not have been the driver of the motorcycle when it was first observed by Officer Moser. Officer Slack described the intersection of Soulsbyville Road and Highway 108 as not well lighted and surrounded by bushes and foliage. (The trial judge apparently had personal knowledge of the intersection, having lived in the area his entire life.) Thus, Officer Moser conceivably could have missed seeing a second person on the motorcycle. Also, appellant's story that he was not the driver was corroborated by several witnesses. We cannot upset the trial court's credibility determination on the fifth finding.

(a)(1) of section 13353³ required such a finding. *Weber v. Orr* (1969) 274 Cal.App.2d 288 is on point. There, the court noted that the section 13353 implied consent clause covered " '[a]ny person who drives a motor vehicle on a highway . . . .' " (*Id.* at p. 290.) (The highway requirement has since been dropped, and the implied consent statute is now found in section 23157.) The *Weber* court stated: "It will be seen that in respect of the use of a highway there are two demands made by the statute in order to make effective the requirement for yielding to one of the tests. The first is contained in the initial sentence. *A person must actually drive a motor vehicle upon a highway.* It is this driving upon a highway which implies the giving of consent, as further described in the section.

"The second demand contained in the statute is that a peace officer have reasonable cause to believe that the affected person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. The fact that the officer has reasonable cause to believe that a person was driving upon a highway is not sufficient if actually he was not so driving. If he was not driving upon a public highway, he did not impliedly consent to the test, no matter what the appearances to the officer may have been. In this respect there is, of course, a difference between the subjects of driving upon a highway and of being under the influence of intoxicating liquor. As to the latter, reasonable appearances to the peace officer are sufficient." (*Id.* at p. 291, italics added; see also *Serenko v. Bright* (1968) 263 Cal.App.2d 682, 687 [70 Cal.Rptr. 1].)

This construction of the implied consent law seems mandatory. Consent must be implied from some act of the arrestee, not from a peace officer's "reasonable belief" that the arrestee has so acted. More recent cases dealing

---

³Section 13353, subdivision (a)(1), as it read at the time of appellant's arrest, provided in pertinent part: "(a)(1) *Any person who drives a motor vehicle* shall be deemed to have given his or her consent to chemical testing of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood, and to have given his or her consent to chemical testing of his or her blood or urine for the purpose of determining the drug content of his or her blood, if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to, or the noncompletion of, the required chemical testing will result in (A) the suspension of the person's privilege to operate a motor vehicle for a period of six months, (B) the suspension of the person's privilege to operate a motor vehicle for a period of one year if the person has previously been convicted of a violation of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal, or (C) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the person has previously been convicted of two or more violations of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal." (Italics added.)

with similar facts have avoided the consent question. Whether this is due to counsel's failure to raise it or to the appellate court's blind adherence to the four required findings explicated in section 13353, is unclear. (See, e.g., *Mueller* v. *Department of Motor Vehicles* (1985) 163 Cal.App.3d 681 [210 Cal.Rptr. 14]; *Noia* v. *Cozens* (1973) 34 Cal.App.3d 691 [110 Cal.Rptr. 231].)

In sum, the trial court's finding that the department had failed to prove that appellant was actually driving the motorcycle when he was arrested precludes a suspension of appellant's license based on appellant's refusal to submit to a test to determine the alcohol content of his blood. The implied consent statute (now found at § 23157) is in essence a jurisdictional prerequisite to the license suspension proceedings under section 13353. Accordingly, appellant's petition for a writ of mandate should have been granted.

Let a writ of mandate issue directing the Department of Motor Vehicles to set aside its suspension of appellant's driving privileges. Appellant to recover his costs on appeal.

Woolpert, J., and Martin, J., concurred.