[No. A040529. First Dist., Div. Five. Aug. 26, 1988.]

DOUGLAS SIMS RICE, Plaintiff and Respondent, v.
A. A. PIERCE, as Director, etc., Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel and Victor D. Sonenberg, Deputy Attorneys General, for Defendant and Appellant.

Richard C. Stone and Louis J. Goodman for Plaintiff and Respondent.

**OPINION**

**LOW, P. J.**—Douglas Sims Rice was arrested for driving under the influence (Veh. Code, § 23152).[1] He refused to submit to a field sobriety test and also refused to submit to chemical testing as required by the implied consent law. (§ 23157.) He claimed that he did not have to participate since he was not driving the car. The Department of Motor Vehicles (the Depart-

---

[1] All section references are to the Vehicle Code.

ment) revoked plaintiff's driver's license for three years in light of his two previous driving-under-the-influence convictions. (§ 13353, subd. (a).) The revocation was upheld following an administrative hearing. (§ 13353, subd. (b).) Rice petitioned the superior court for a writ of mandate compelling the Department to lift the revocation. Relying on *Medina* v. *Department of Motor Vehicles* (1987) 188 Cal.App.3d 744 [233 Cal.Rptr. 557], Rice asserted that the revocation order was invalid because the referee made no finding that he actually drove the car. The court granted the petition and the Department appeals from that order. We reverse.

California Highway Patrolman Roger Underwood was dispatched to a restaurant in San Lorenzo in response to a report by an off-duty California Highway Patrol officer, J. Goodman, who observed plaintiff's vehicle driving erratically across the San Mateo Bridge, almost hitting the railing several times. The car also ran a red light. As they stood in the restaurant parking lot, Officer Goodman pointed out the suspect to Officer Underwood as plaintiff stood outside his car. Plaintiff then walked towards the entrance of the restaurant. Officer Underwood approached him, advised him that he was suspected of driving under the influence and requested his driver's license. Rice refused, asserting he was not driving a car. The officer noticed Rice had a strong odor of alcohol, that his eyes were glassy and bloodshot and his speech was slurred. Rice also staggered when he walked from the parking lot to the restaurant.

At that point, Officer Underwood had off-duty Officer Goodman place Rice under arrest for driving under the influence of alcohol; Underwood advised him of his obligation to submit to a chemical test and that a refusal would lead to revocation of his license. Rice interrupted the officer several times shouting that he was not driving the car. Rice refused to submit to any test. Rice did not testify at the administrative hearing and he introduced no evidence contradicting the officer's testimony that he was seen driving the car.

Section 13353, subdivision (b) expressly requires the referee to make four findings before he or she may affirm the license revocation: (1) whether the officer had reasonable cause to believe the person was driving a vehicle while under the influence of drugs or alcohol, (2) whether the person was placed under arrest, (3) whether the person was told that if he refused to submit to a chemical test his license would be suspended or revoked, and (4) whether the person refused to submit to such a test. (See generally, *Padilla* v. *Meese* (1986) 184 Cal.App.3d 1022, 1026 [229 Cal.Rptr. 310].) There is no requirement that the referee determine that plaintiff was actually driving the car, and the referee made no such finding. At the hearing, both parties stipulated to the existence of the fourth element.

Plaintiff argues that the referee must find not only that the officers had reasonable cause to believe he was driving under the influence, but must also find that he was in fact the driver of the vehicle. Although no written findings were prepared, we presume that the referee complied with the statute and that he made the four factual findings necessary to support the revocation order. (See generally, *Jones* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 615, 620 [139 Cal.Rptr. 734].)

In his successful writ petition to the superior court, Rice relied on *Medina* v. *Department of Motor Vehicles, supra,* 188 Cal.App.3d 744. There, an officer overheard a radio transmission concerning a motorcycle being driven in excess of 90 miles per hour. The officer observed the motorcycle as it turned from the highway onto a county road. The officer testified that she believed the motorcycle had only one rider when she first observed it. When the officer finally caught up to the motorcycle, only Medina was sitting on it. Medina was arrested for driving under the influence and he refused to submit to a chemical test. His license was suspended for six months. At the administrative hearing, Medina testified that his friend was driving him home. When they saw the police the friend stopped the motorcycle and fled. This version was corroborated by the friend and other witnesses at the administrative hearing. There was also evidence which cast doubt on the accuracy of the officer's observations. A highway patrol officer who responded to the scene testified that the lighting in the area was poor, bushes and foliage surrounded the area and that there was a slight incline in the roadway. (*Id.,* at pp. 746-747.)

In addition to the four findings expressly required by the statute, the referee also found that Medina was actually driving the motorcycle. (188 Cal.App.3d at p. 748.) The trial court affirmed the first four findings, notably that the officer had reasonable cause to arrest Medina for driving under the influence. But the trial court concluded that there was insufficient evidence to support the finding that Medina was the actual driver. (*Id.,* at p. 749.) Nevertheless, in spite of this apparent inconsistency, the trial court upheld the suspension. (*Ibid.*) The Court of Appeal reversed, holding that to suspend a license pursuant to the implied consent law there must first be a finding that plaintiff was actually driving upon the highway, which act implies the giving of consent. (*Id.,* at pp. 749-750.) The court went on to state that the consent must be implied from the act of the arrestee, and cannot be based upon the police officer's " 'reasonable belief.' " (*Id.,* at pp. 750-751.) We conclude that *Medina* is not persuasive and decline to follow its ruling.

Section 23157 provides: "(a)(1) Any person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her

blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood . . . if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. . . ."

Relying on *Weber* v. *Orr* (1969) 274 Cal.App.2d 288 [79 Cal.Rptr. 297], the *Medina* court construed the statute to require an additional finding that the arrestee was the driver of the vehicle before he could be subject to chemical testing for drugs or alcohol. (*Medina* v. *Department of Motor Vehicles, supra,* 188 Cal.App.3d at pp. 749-750.) We reject that interpretation as paying inadequate deference to the state's broad police power to legislate for the common health and welfare—i.e., " 'to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving.' (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900].)" (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917].)

The gravity of the problem of driving while under the influence of alcohol or drugs cannot be underestimated. In 1984 in California, fatal alcohol-involved accidents accounted for more than 2,600 deaths, an increase of 10.6 percent over the previous year. For the same year, over 67,800 persons were injured in alcohol-related accidents. (Cal. Highway Patrol, 1984 Ann. Rep., Fatal & Injury Motor Vehicle Traffic Accidents, pp. 33-34, tables 5p, 5q.) In 1986 in California alone, there were over 342,000 misdemeanor and felony arrests of adults for driving under the influence. (Laurence, *The Origins and Development of Penalties for Drunk Drivers in California* (1988) Bur. Crim. Statistics Forum, p. 4.) Nationally, of the 15 states reporting, there were 25,582 drunk-driving fatalities in 1984. (U.S. Dept. of Transportation, National Highway Transportation Safety Admin., Fatal Accident Reporting System (1984).) These figures are but the tip of the iceberg. Reliable estimates indicate that only one out of every two thousand drunk drivers is apprehended. (See *Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321, 1340 [241 Cal.Rptr. 42, 743 P.2d 1299].) As our Supreme Court observed in *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 262 [198 Cal.Rptr. 145, 673 P.2d 732], "[t]he drunk driver cuts a wide swath of death, pain, grief, and untold physical and emotional injury across the roads of California and the nation. The monstrous proportions of the problem have often been lamented in graphic terms by this court and the United States Supreme Court. [Citations.] . . . [I]n the years 1976 to 1980 there were many more injuries to California residents in alcohol-related traffic accidents than were suffered by the entire Union Army during the Civil War, and more were killed than in the bloodiest year of the Vietnam War. [Citation.] Given this setting, our

observation that '[d]runken drivers are extremely dangerous people' [citation] seems almost to understate the horrific risk posed by those who drink and drive." (See also *Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445, 452 [214 Cal.Rptr. 249].)

It is with these concerns in mind that our Legislature has increased the severity of penalties for driving while intoxicated, requiring mandatory jail time and fines for most first offenders together with license suspension. (§§ 23160, 23161, 23180, 23181.) In a further effort to stop the carnage caused by drivers under the influence, nontraditional methods have been approved to detect and remove these drivers from our streets. In *Ingersoll* v. *Palmer, supra,* 43 Cal.3d at pages 1329-1335, our Supreme Court approved a city's use of sobriety checkpoints as a legitimate and effective mechanism to serve this very important public interest. The court recognized that the sobriety checkpoint performed a vital regulatory purpose of keeping intoxicated drivers off the highways to the end of enhancing public safety. (*Id.*, at p. 1335.)

■ The purpose of the implied consent law is two-fold: (1) to obtain the best evidence of blood alcohol content while ensuring cooperation of the person arrested, and (2) to inhibit driving under the influence. (See *Kesler* v. *Department of Motor Vehicles, supra,* 1 Cal.3d at p. 77; *McGue* v. *Sillas* (1978) 82 Cal.App.3d 799, 804-805 [147 Cal.Rptr. 354]; *People* v. *Kraft* (1970) 3 Cal.App.3d 890, 897-898 [84 Cal.Rptr. 280].) It would serve no useful policy to permit an intoxicated person suspected of driving a vehicle to refuse to take a chemical test for alcoholic content. ■ To require an additional finding that the arrestee was actually driving, would undermine the important goals of cooperation and deterrence. Rather than carve out an exception, the legislative policy tries to get these people off the road and out of harm's way. In light of the severity of the problem and the difficulty of detection, the law encourages compliance with the implied consent law in situations where the officer reasonably suspects the arrestee to have been driving while under the influence of alcohol or drugs. To bar license suspension of persons who are lawfully arrested but are subsequently found not to be the actual driver would render enforcement more difficult at a time when society deserves increased protection in eradicating a problem which unfortunately has become all too common in our modern, mobile culture.

Section 23157, subdivision (a)(1) refers to any "person" lawfully arrested allegedly in violation of section 23152 or 23153. Section 23157 does not speak in terms of the lawful arrest of a "driver." (Cf. definitions of "person" in § 470 and "driver" in § 305.) A lawful arrest for driving under the influence requires that there be reasonable cause to believe the person was

driving (*Noia* v. *Cozens* (1973) 34 Cal.App.3d 691, 694 [110 Cal.Rptr. 231]), not proof beyond a reasonable doubt the arrestee was in fact driving.

The fundamental principle of statutory interpretation is " 'the ascertainment of legislative intent so that the purpose of the law may be effectuated. . . .' [Citation.]" (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141]; *Kesler* v. *Department of Motor Vehicles, supra,* 1 Cal.3d at p. 77.)

The statute is unambiguous and states that upon a lawful arrest for driving under the influence, a person must submit to one of the chemical tests administered at the direction of a peace officer. Upon failure to submit, the person shall suffer loss of his driving privileges. This interpretation is consistent with the very important purpose of the statute to keep persons who are reasonably suspected of operating a vehicle while intoxicated off the road and to secure the civil cooperation of all persons privileged to drive by providing objective proof of their sobriety when suspected of driving under the influence. (See *McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804]; also *Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d at p. 452.) Other than to cite to *Medina,* plaintiff makes no showing why we should disregard the plain language and engraft an additional requirement onto the statute. In light of our interpretation of the statute, we decline to follow *Medina.*

We have other reasons not to follow *Medina.* There, the licensee had introduced evidence which undermined the arresting officer's testimony that she saw him driving the motorcycle. The conflict in the evidence caused the superior court to conclude that he was not driving the motorcycle. (*Medina* v. *Department of Motor Vehicles, supra,* 188 Cal.App.3d at p. 749.) Likewise, in *Weber* v. *Orr, supra,* relied upon by *Medina,* the reviewing court found insufficient evidence to support a finding that the arrestee was driving *upon the highway* as then required by the implied consent law. (274 Cal.App.2d at p. 291.) By contrast, plaintiff here introduced no evidence to contradict the officer's testimony that Officer Goodman saw him driving the car. Under these circumstances, we find that substantial evidence exists to support a factual finding that Rice actually drove the car, if such a finding were required.

The order granting the petition for a writ of mandate is reversed. The superior court is directed to enter an order denying the writ petition.

King, J., and Haning, J., concurred.