[No. F012771. Fifth Dist. Oct. 22, 1990.]

CANDY GAYLEN JACKSON, Plaintiff and Appellant, v.
A. A. PIERCE, as Director, etc., Defendant and Respondent.

COUNSEL

Chain, Younger, Lemmucchi, Cohn & Stiles and John A. Tello for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendant and Respondent.

OPINION

DIBIASO, J.— ▇ This court's opinion in *Medina* v. *Department of Motor Vehicles* (1987) 188 Cal.App.3d 744, 747 [233 Cal.Rptr. 557], requires the Department (DMV) to prove, and the administrative hearing officer to expressly find, that a person was actually driving a vehicle in order to justify the DMV's suspension of the person's license to drive for failing to submit to a blood-alcohol test under the implied consent law (Veh. Code,

§§ 23157 & 13353).[1] A later case from Division Five of the First District, *Rice* v. *Pierce* (1988) 203 Cal.App.3d 1460 [250 Cal.Rptr. 832], did not follow Medina and instead held no such proof or finding was required. Having reexamined *Medina* in light of *Rice,* we decline to depart from our earlier decision. Because the DMV hearing officer in this case failed to make any finding about whether appellant was driving, we will reverse the judgment and direct the trial court to order the officer to address, and make a finding on, the issue.

On November 3, 1988, appellant Candy Gaylen Jackson was arrested for a violation of section 23152, subdivision (a) (driving under the influence of alcohol or drugs). The DMV suspended her license, pursuant to section 13353. At appellant's request, an administrative hearing on the propriety of the suspension was held. (§ 14100 et seq.) The hearing officer found the suspension valid.

The appellant's subsequent petition for writ of mandate, filed in the Kern County Superior Court, was denied.

## FACTS

The following is a summary of the testimony taken at the administrative hearing.

On November 3, 1988, at approximately 3 a.m., Officer Mills of the Bakersfield Police Department was dispatched to the site of an auto accident in the 600 block of New Stine Road. When he arrived, he found a locked automobile resting in the front yard of a residence. Mills was approached by appellant, who said her car had just been involved in an accident. Officer Lewis of the Bakersfield Police Department also came to the scene. Appellant identified herself to Lewis as the driver of the vehicle at the time of the accident. The auto was not registered to appellant.

Mills told Lewis he had seen the vehicle parked on a street in the area prior to the accident. There was a woman sitting in the driver's seat and a man leaning through the driver's side window. Mills could not describe the woman or identify appellant as the person he saw behind the wheel. Lewis said appellant identified the man as a friend named "Mike" or "Michael."

Appellant also told Lewis she did not have the keys to the car; she did not explain where they were.[2] The driver's seat of the vehicle was adjusted so as

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.
[2] The keys were never found.

to be closer to the dashboard than the front passenger seat. Appellant claimed she had been seated in the front passenger seat wearing a lap belt and shoulder harness at the time of the accident. From the position of the front seats, Mills did not believe appellant could have been driving the auto.

Lewis testified appellant exhibited signs of intoxication, including the odor of alcohol on her breath, red watery eyes, and slurred speech. She failed to adequately perform field sobriety tests. Appellant told Lewis she had consumed five or six beers. Based on these facts, Lewis formed the opinion appellant was under the influence and arrested her for a violation of section 23152, subdivision (a). After placing her under arrest, Lewis admonished appellant several times regarding the chemical test requirements of section 23157. Lewis testified appellant refused to take any chemical test.

Appellant testified she had been parked on the street in front of the home of her boyfriend, Michael Vitale. She and Vitale argued. She began to cry. At some point during the argument, Vitale said he thought appellant was too upset to drive so he got into the car, sat in the driver's seat, and started to drive away. After Vitale assumed control of the auto, appellant grabbed the wheel. A struggle ensued which led to the accident.

At the administrative hearing, appellant denied she had been driving when the accident occurred. She admitted, however, she had not denied being the driver when questioned by the arresting officers at the scene. She introduced into evidence a letter, signed by Michael Vitale, supporting her testimony. Appellant maintained she had agreed to take a breath test but not a blood test because she was afraid of needles. She said the test personnel refused to give her a breath test.

The parties' respective accident reconstruction evidence was in conflict.

As to the criminal charges, appellant entered a plea of nolo contendere to a violation of Penal Code section 415 (disturbing the peace). The section 23152, subdivision (a), charge was dismissed.

In the mandate proceeding, the parties stipulated the evidence before the superior court would consist of all evidence presented at the administrative hearing, the record of that proceeding, and all documents attached to the pleadings filed in the superior court.

### DISCUSSION

In *Medina* v. *Department of Motor Vehicles, supra,* 188 Cal.App.3d 744, the DMV hearing officer made the following five findings: (1) the arresting

officer had reasonable cause to believe Medina had been driving a motor vehicle in violation of section 23152 or 23153; (2) Medina was lawfully arrested; (3) Medina was adequately notified his driving privilege would be suspended if he failed to submit to or complete the chemical test; (4) Medina refused to submit to the chemical test after being requested to do so; and (5) Medina was driving a motor vehicle.

The first four findings were expressly required by section 13353 as a condition of the suspension of Medina's license. (Former § 13353, subds. (b) & (c)(1), now § 13353, subd. (b).) The fifth was not. The trial court upheld the license suspension even though it concluded the DMV had not proved Medina was actually driving the vehicle.

On appeal, we decided a finding that the licensee was driving, although not expressly called for by section 13353, subdivision (c)(1), was required by virtue of the terms of subdivision (a) of section 13353 (now subd. (a)(1) of § 23157). We relied upon *Weber* v. *Orr* (1969) 274 Cal.App.2d 288 [79 Cal.Rptr. 297]. There, the court pointed out that under section 13353, subdivision (a), the implied consent law applied to "[a]ny person who drives a motor vehicle on a highway . . . ."[3] (*Id.* at p. 290.) The Weber court then reasoned: "It will be seen that in respect of the use of a highway there are two demands made by the statute in order to make effective the requirement for yielding to one of the tests. The first is contained in the initial sentence. A person must actually drive a motor vehicle upon a highway. It is this driving upon a highway which implies the giving of consent, as further described in the section.

"The second demand contained in the statute is that a peace officer have reasonable cause to believe that the affected person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. The fact that the officer has reasonable cause to believe that a person was driving upon a highway is not sufficient if actually he was not so driving. If he was not driving upon a public highway, he did not impliedly consent to the test, no matter what the appearances to the officer may have been. In this respect there is, of course, a difference between the subjects of driving upon a highway and of being under the influence of intoxicating liquor. As to the latter, reasonable appearances of the peace officer are sufficient." (274 Cal.App.2d at p. 291.)

We agreed "[c]onsent must be implied from some act of the arrestee, not from a peace officer's 'reasonable belief' that the arrestee had so acted."

---

[3] The "on a highway" element was subsequently eliminated. (*Medina, supra,* 188 Cal.App.3d at p. 750.)

(*Medina, supra*, 188 Cal.App.3d at p. 750.) We perceived "[t]he implied consent statute . . . [as] in essence a jurisdictional prerequisite to the license suspension proceedings under section 13353." (*Id*. at p. 751.) Thus, we held the trial court's determination the DMV had failed to prove Medina was driving precluded a suspension of his license.

The First District Court of Appeal reached the opposite conclusion in *Rice* v. *Pierce, supra*, 203 Cal.App.3d 1460. A referee had upheld a license revocation without making any findings. In a subsequent mandate proceeding, the licensee relied on *Medina* v. *Department of Motor Vehicles, supra*, 188 Cal.App.3d 744. The trial court granted the writ petition. The appellate court reversed, finding *Medina* unpersuasive. It felt our construction of the implied consent statute paid inadequate deference to the state's broad police power to legislate for the common health and welfare by establishing means to detect and deter drunken driving. (*Rice, supra*, 203 Cal.App.3d at p. 1464.)

"It would serve no useful policy to permit an intoxicated person suspected of driving a vehicle to refuse to take a chemical test for alcoholic content. To require an additional finding that the arrestee was actually driving, would undermine the important goals of cooperation and deterrence. Rather than carve out an exception, the legislative policy tries to get these people off the road and out of harm's way. In light of the severity of the problem and the difficulty of detection, the law encourages compliance with the implied consent law in situations where the officer reasonably suspects the arrestee to have been driving while under the influence of alcohol or drugs. To bar license suspension of persons who are lawfully arrested but are subsequently found not to be the actual driver would render enforcement more difficult at a time when society deserves increased protection in eradicating a problem which unfortunately has become all too common in our modern, mobile culture. [¶] Section 23157, subdivision (a)(1) refers to any 'person' lawfully arrested allegedly in violation of section 23152 or 23153. Section 23157 does not speak in terms of the lawful arrest of a 'driver.' [Citations.] . . . [¶] The statute is unambiguous and states that upon a lawful arrest for driving under the influence, a person must submit to one of the chemical tests administered at the direction of a peace officer. Upon failure to submit, the person shall suffer loss of his driving privileges. This interpretation is consistent with the very important purpose of the statute to keep persons who are reasonably suspected of operating a vehicle while intoxicated off the road and to secure the civil cooperation of all persons privileged to drive by providing objective proof of their sobriety when

suspected of driving under the influence. [Citations.]" (*Rice, supra,* 203 Cal.App.3d at pp. 1465-1466.)[4]

*Rice* does not convince us to abandon *Medina*. *Rice* summarized the holding in *Medina* as follows: "[T]he *Medina* court construed the statute to require an additional finding that the arrestee was the driver of the vehicle before he could be subject to chemical testing . . . ." (*Rice, supra,* 203 Cal.App.3d at p. 1464.) We read *Medina* differently. In our view, it holds— as we will—that the additional finding is required before the arrestee's license is suspended, not before he or she may be tested.

Section 23157 is the foundational provision of the implied consent law. It says "[a]ny person who drives a motor vehicle is deemed to have given his or her consent to . . . testing . . . ." Under this plain language, it is the *act of driving* a motor vehicle, rather than the act of obtaining a California driver's license, which activates the admonition and testing procedures found in section 13357. Other cases have so held. (See *Serenko* v. *Bright* (1968) 263 Cal.App.2d 682, 687 [70 Cal.Rptr. 1]; *Spurlock* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 821, 828-829 [82 Cal.Rptr. 42].) *Rice* has the effect of writing this elemental phrase out of existence. ■ If possible, the courts should not construe a statute so as to render one of its provisions nugatory. (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].)

"In construing a statute the function of the judge is simply to ascertain what in terms or substance is already there and not to insert what has been omitted or omit what has been inserted. [Citation.] Under the guise of construction the court will not rewrite a law [citation]; it will not supply an omission [citation]; and it will not give the words an effect different from the plain and direct import of the terms used. [Citation.]" (*Estate of Tkachuk* (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55].)

■ We disagree with the decisive role assigned by *Rice* to the portion of section 23157, subdivision (a)(1), which authorizes the testing of a "person"—as opposed to a "driver"—lawfully arrested, if the officer reasonably believes the person was driving. (*Rice, supra,* 203 Cal.App.3d at p. 1466.) Although it is indeed unambiguous, this one clause should not be assessed

---

[4] The court in *Rice* distinguished the *Medina* case on another ground not relevant here. In *Medina*, the licensee had introduced evidence which undermined the officer's testimony that the licensee had been driving. The conflict in the evidence was resolved by the trial court in favor of the licensee. In *Rice*, the licensee introduced no evidence to contradict the testimony of the officer, which placed the licensee behind the wheel. Thus, in *Rice*, even if the court had required a driving finding, substantial unchallenged evidence existed to support it. By contrast, in the present case there is conflicting evidence on the issue.

in isolation. Instead, it must be evaluated "in the context of the entire statute of which it is a part, in order to achieve harmony among the parts." (*People* v. *Morris* (1988) 46 Cal.3d 1, 16 [249 Cal.Rptr. 119, 756 P.2d 843].)

Considered in its relationship to the entirety of section 23157, as well as section 13353, the authorization has an obvious and important purpose; that is, to permit an officer to administer a test if he or she has lawfully arrested one who is suspected of driving under the influence. Undoubtedly, the law recognizes that, for a variety of reasons, an officer on the scene may not in every instance be able to identify with certainty the actual driver of a vehicle. The Legislature has thus made the officer's reasonable suspicion enough to warrant giving the tests to every individual who may have been driving while intoxicated. By doing so, the immediate goal of the law, to preserve the best evidence of a suspect's blood-alcohol content, is achieved. (See *Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 626 [232 Cal.Rptr. 50].)

However, the suspension of an individual's license is another matter. Suspension is the result of the person's failure to do what he or she has consented to do—submit to a test. The first 19 words of section 23157 clearly proclaim that the consent is implied by law from the act of driving. If the person was not driving, he or she did not impliedly agree to submit to the test and, under the statute, has every right to refuse to take it. A person who has no obligation to comply with a law should not be punished for failing to comply with it.

Initially, section 23157, subdivision (a)(1), provides that "*any* person who drives" is considered to have consented to chemical testing, if lawfully arrested. Thereafter, the section uses "*the* person" in its subsequent provisions which apply to "any person who drives" and is lawfully arrested. Section 13353, subdivision (a), refers to "*any* person who refuses [to comply with the officer's request to submit to a test] *pursuant to Section 23157.*" (Italics added.) Section 13353 then uses "*the* person" in its subsequent provisions which apply to "any person who refuses." Hence, the "person" who is the subject of section 13353 is, necessarily, the "person" who is the subject of section 23157. The "person" who is the subject of section 23157 is one "who drives," and is lawfully arrested.

We do not dispute or underestimate the severity of the problem of drunken driving or the appropriateness of the legislative response manifested by the implied consent law. However, we must assume the Legislature knew what it was saying and, in the absence of ambiguity, meant what it said. (*Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 4-5 [327 P.2d 928].) Even if the implied consent law was intended to have the effect given it by *Rice*, in our view the Legislature did not carry out this purpose in the

express language of sections 23157 and 13353. A court may not depart from the clear terms of a statute even if the consequences of doing so will leave a legislative desire unsatisfied. (*Anderson* v. *I.M. Jameson Corp.* (1936) 7 Cal.2d 60, 68 [59 P.2d 962].)

We also fail to see how the requirement that the DMV prove a person was actually driving before his or her license may be suspended for refusing the test undercuts the "regulatory purpose of keeping intoxicated drivers off the highways . . . ." (*Rice, supra*, 203 Cal.App.3d at p. 1465.) The implied consent law was enacted as an alternative method to the forcible physical extraction of a blood sample from one suspected of drunken driving. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917].) Such evidence is sought for use in a criminal prosecution of the arrestee for driving under the influence. (See *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 772 [312 P.2d 690].) Conviction of such a charge requires the People to prove the defendant was driving. (See §§ 23152 & 23153.) The serious mandatory punishments imposed for multiple violations of the drunk driving laws are intended to inhibit potential—particularly repeat—offenders. Thus, the implied consent law plays a vital role in accomplishing this long-term goal. (*Webb* v. *Miller, supra*, 187 Cal.App.3d at p. 626.)

Nevertheless, the application of section 23157, in a manner consistent with its explicit terms, does not appear to hamper the effort to rid our streets and highways of drunken drivers. If an intoxicated person who declines to take the test is ultimately determined not to have been driving, the long-term aim of the statutes is not deflected; the person in fact conformed to society's desire that he or she not drive while inebriated. It seems rather unfair to discipline individuals for doing what is asked of them. On the other hand, if an intoxicated person is ultimately determined to have been driving, he or she will bear the consequences of either a refusal to take the test or a criminal conviction based in part upon the incriminatory results of a consensual test.

We will follow *Medina*.

The administrative record reflects an unambiguous determination by the hearing officer that the only issues before him were those specifically listed in section 13353. He thus did not believe he was required to decide, or make a finding on, the question of whether appellant was the driver of the car at the time of the accident. Consistent with his view, he only made express findings on the four issues enumerated in section 13353.

In addition, the evidence adduced about whether appellant was driving and whether she refused to take the test was in significant conflict, and in large part, involved credibility determinations. Thus, unlike the situation in *Rice*, there is evidence in this record which would support a finding either way.

In these circumstances, we cannot imply a finding on the issue of driving. We will therefore reverse and direct the superior court to return the case to the agency with directions to rule on the point. (*Woodland Hill Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 837-838 [118 Cal.Rptr. 856]; see also *Mumaw* v. *City of Glendale* (1969) 270 Cal.App.2d 454, 461 [76 Cal.Rptr. 245].)

## DISPOSITION

The judgment is reversed. The case is remanded to the superior court with instructions to enter a judgment granting the petition for writ of mandate and ordering the DMV (1) to consider, and make a finding on, whether appellant was the driver of the car, and (2) thereafter to take appropriate action, as required by law, regarding the suspension of appellant's license to drive.

Martin, Acting P. J., and Ardaiz, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 17, 1991.