No. 70,093

LARRY L. FURTHMYER, *Appellant/Cross-appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee/Cross-appellant.*
(888 P.2d 832)

Opinion filed January 27, 1995.

*Michael S. Holland*, of Russell, argued the cause and was on the briefs for the appellant/cross-appellee.

*Brian Cox*, of the Kansas Department of Revenue, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ABBOTT, J.: We granted the petition for review of the Kansas Department of Revenue primarily to determine the standard the Kansas implied consent law, K.S.A. 8-1001 *et seq.*, requires before person's driver's license can be suspended for refusing to submit to a test requested by a law enforcement officer to determine the person's blood alcohol concentration. Does the implied consent law require that the person whose driver's license is subject to suspension was actually operating or attempting to operate a motor vehicle, or is reasonable grounds to believe the person was

operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs sufficient?

Rick Harter of the Russell Police Department observed Larry Furthmyer's vehicle stopped at a stop sign at the intersection of Ash and Highway 40 at approximately 1:15 a.m. on November 22, 1992. Harter did not know how long the vehicle had been sitting there, and he never saw the vehicle moving. After watching the vehicle for 4-5 minutes, Harter approached the vehicle to investigate. The car was running and in gear, and the headlights were on. Furthmyer was in the driver's seat with his hands in his lap and his foot on the brake. He was slumped over the steering wheel, either asleep or passed out. A passenger in the right front seat of the vehicle was also either asleep or passed out.

Harter attempted to rouse Furthmyer, who eventually rolled down his window. Harter reached into the vehicle, placed it in park, and shut the motor off. Harter detected a strong odor of alcohol coming from inside the vehicle, but he did not recall smelling it coming from Furthmyer. Furthmyer stepped out of the vehicle with Harter's help after some difficulty, and he retrieved his driver's license from his wallet with some difficulty after Harter pointed it out. Furthmyer's speech was slurred. Furthmyer told Harter that he was at home or in Salina and admitted that he had been drinking. Harter subsequently arrested Furthmyer for driving while under the influence.

After transporting Furthmyer to the sheriff's department, Harter videotaped dexterity tests and informed Furthmyer of the implied consent advisory. Furthmyer agreed to take a breath test and he placed the mouthpiece to his mouth, but he produced an insufficient breath sample despite Harter's urging to continue blowing. Harter construed this as a refusal. The refusal is not an issue on appeal.

Following an administrative hearing on March 3, 1993, Furthmyer's driver's license was suspended for one year for the refusal. Furthmyer then sought review by the district court pursuant to K.S.A. 8-259(a) (judicial review of agency suspension). Furthmyer argued to the trial court, among other points, that he was not operating or attempting to operate the vehicle and therefore was

not subject to the implied consent law. The trial court held that an officer need only have reasonable grounds to believe a person was operating or attempting to operate a motor vehicle while under the influence of alcohol, coupled with an arrest, in order to request a breath test. The court held that Harter had reasonable grounds to believe Furthmyer was operating or attempting to operate his vehicle while under the influence of alcohol and therefore affirmed the suspension of Furthmyer's driver's license.

Furthmyer then appealed to the Court of Appeals, raising only the issue of whether the sanctions of the implied consent law apply to individuals who are not found to have been operating or attempting to operate a motor vehicle at the time of the offense which forms the basis for the suspension. The Kansas Department of Revenue (KDR) cross-appealed, asserting that Furthmyer failed to preserve that issue by raising it at the administrative hearing.

The Court of Appeals held that Furthmyer had properly preserved the issue for review by the district court and that the sanctions of the implied consent law apply only to individuals who are found to have been operating or attempting to operate a motor vehicle. The Court of Appeals remanded to the trial court for a factual finding whether Furthmyer was operating or attempting to operate a motor vehicle. *Furthmyer v. Kansas Dept. of Revenue*, 19 Kan. App. 2d 591, 873 P.2d 1365 (1994).

This court granted KDR's petition for review.

## I. PRESERVATION OF ISSUE

The Court of Appeals acknowledged that issues not raised before the hearing officer may not be raised on appeal. 19 Kan. App. 2d at 592. However, the court relied upon Furthmyer's claim that he told the hearing officer he wished to preserve all statutory issues for appeal, which is verified by the hearing officer's notes. The court also pointed out that the hearing officer's notes reflect that he heard evidence on whether the "[l]aw enforcement officer(s) had reasonable grounds to believe that the respondent was operating or attempting to operate a motor vehicle while under the influence of alcohol, drugs or both." The court concluded:

"In cases such as these, where the record is produced by the agency, we presume that an indication in the record that all legal issues were raised should be believed. The issue is properly before us." 19 Kan. App. 2d at 592-93.

The record of the administrative hearing is sketchy. There is no transcript of the hearing; the only record is the hearing officer's notes which reflect that "all statutory issues" were raised but do not specifically show that the issue whether Furthmyer was in fact operating or attempting to operate a vehicle was raised. We are satisfied that on the record before us KDR has not demonstrated a failure to raise the issue.

In any event, fatal to KDR's cross-appeal is its failure to argue to the trial court that Furthmyer did not raise this issue at the administrative hearing. The rule KDR seeks to apply to Furthmyer, that issues not raised before the hearing officer may not be raised on appeal, is also binding on KDR. Because KDR did not argue to the trial court that Furthmyer had failed to properly preserve the issue by raising it at the administrative hearing, KDR waived any complaint that the issue was not properly preserved. KDR cannot now make an argument it failed to make in the trial court. See *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, Syl. ¶ 3, 809 P.2d 1215 (1991); *Ostmeyer v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 639, 645, 827 P.2d 780, *rev. denied* 250 Kan. 806 (1992).

## II. STANDARD TO BE APPLIED

Furthmyer's sole argument on appeal is that the sanctions of the Kansas implied consent law, K.S.A. 8-1001 *et seq.*, apply only to individuals who operate or attempt to operate motor vehicles. Because the trial court found only that Officer Harter had reasonable grounds to believe that Furthmyer was operating or attempting to operate a motor vehicle while under the influence of alcohol and made no finding whether Furthmyer was in fact operating or attempting to operate a motor vehicle, Furthmyer urges that the sanctions for refusing a chemical test cannot be applied. Furthmyer does not challenge the trial court's finding that Harter had reasonable grounds to believe he was operating

or attempting to operate a motor vehicle while under the influence of alcohol, nor does Furthmyer contest that he was arrested, that the requisite notices were given, and that he refused the breath test by providing an inadequate breath sample.

KDR contends the refusal sanctions are applicable to any person a law enforcement officer has reasonable grounds to believe has operated or attempted to operate a motor vehicle while under the influence of alcohol.

The relevant portions of the Kansas implied consent law are as follows:

"(a) *Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent, subject to the provisions of this act,* to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. . . .

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) *if the officer has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both,* . . . and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both . . . ." (Emphasis added.) K.S.A. 8-1001.

If a person refuses a test requested under K.S.A. 8-1001(b) and the refusal is certified, KDR shall suspend the person's driver's license for one year. K.S.A. 8-1014(a). The person may request an administrative hearing concerning the suspension. K.S.A. 8-1002(g).

"If the officer certifies that the person refused the test, *the scope of the hearing shall be limited to whether: (A) A law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both* . . . ; (B) the person was in custody or arrested for an alcohol or drug related offense . . . ; (C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and (D) the person refused to submit to and complete a test as requested by a law enforcement officer." (Emphasis added.) K.S.A. 8-1002(h)(1).

A hearing can also be requested by a person who fails a chemical test. K.S.A. 8-1002(g). The scope of the hearing issues where a person failed, rather than refused, a chemical test includes the

first three listed above (A, B, and C) for refusal cases as well as the following:

"(D) the testing equipment used was reliable; (E) the person who operated the testing equipment was qualified; (F) the testing procedures used were reliable; (G) the test result determined that the person had an alcohol concentration of .10 [now .08] or greater in such person's blood or breath; and (H) *the person was operating a motor vehicle*." (Emphasis added.) K.S.A. 8-1002(h)(2).

Although not applicable to this case, in 1993 the Kansas Legislature added the following provision to the implied consent law: "This act is remedial law and shall be liberally construed to promote public health, safety, and welfare." K.S.A. 1993 Supp. 8-1001(i).

To support their respective positions, both Furthmyer and KDR point to various provisions of the Kansas implied consent law as well as to cases construing the implied consent laws of other jurisdictions. Furthmyer stresses that under K.S.A. 8-1001(a), the only persons who are deemed to have consented to chemical testing are those who operate or attempt to operate motor vehicles. A person who is not operating or attempting to operate a motor vehicle has not consented to a chemical test. Furthmyer reasons that the sanctions for refusing a chemical test can only apply to those who are deemed to have consented to such a test, and therefore KDR must prove that the person operated or attempted to operate a motor vehicle before the sanctions can be imposed.

Furthmyer points out that courts in California and Colorado have accepted similar arguments. In *Marin v. Dep't of Revenue*, 41 Colo. App. 557, 591 P.2d 1336 (1978), Marin's driver's license was revoked after he refused to submit to a requested chemical test. Marin was discovered behind the wheel of a vehicle parked in an alley with the motor running. He claimed that his sister drove him to the alley and left the car with the motor running, and he then moved into the driver's seat and began honking the horn. The hearing officer determined that the officer had reasonable grounds to request a test but made no finding whether Marin had in fact been driving. The trial court affirmed the revocation. 41 Colo. App. at 558. Noting that the relevant Colorado

implied consent statute specifies that its provisions apply to " '[a]ny person who drives any motor vehicle,' " the appellate court stated:

"It is apparent that the concept of implied consent presupposes that the licensee was driving. If not, there is no consent. The refusal of a non-driver to take a sobriety test is not within the scope of the statute. The fact that the arresting officer had reasonable grounds to believe that the licensee had been driving under the influence may be sufficient to authorize the test but it is not sufficient to support sanctions for failure to submit to a test if it is later determined that the licensee was not in fact driving." 41 Colo. App. at 559-60.

Because Marin presented substantial evidence that he was not driving, the burden of proof was on the Department of Revenue at the hearing to prove that Marin was driving. 41 Colo. App. at 560. Because the trial court did not determine whether Marin was driving, the case was remanded to the trial court for such a finding based on the existing record.

California courts have also required proof of driving before implied consent sanctions may be imposed. In *Medina v. Department of Motor Vehicles*, 188 Cal. App. 3d 744, 233 Cal. Rptr. 557 (1987), Medina's driver's license was suspended after he refused a requested chemical test. The test was requested after a motorcycle seen traveling in excess of 90 miles per hour was found pulled to the side of the road. Medina claimed a friend had been driving the motorcycle and Medina was a passenger; after they saw the police officer approaching, Medina told his friend to run and hide. 188 Cal. App. 3d at 746-47. Following an administrative hearing, the referee found that Medina was operating the motorcycle; the trial court reversed this finding. However, the trial court affirmed the suspension because there was reasonable cause to believe Medina was the driver of the motorcycle even though it believed the Department of Motor Vehicles had not proved Medina was actually driving the motorcycle. The Court of Appeal reversed, holding that it is the act of driving which implies the giving of consent. If the person is not driving, then the person has not consented to a chemical test. 188 Cal. App. 3d at 749-50. See *Weber v. Orr*, 274 Cal. App. 2d 288, 79 Cal. Rptr. 297 (1969).

After *Medina*, another panel of the California Court of Appeal reached a different result in *Rice v. Pierce*, 203 Cal. App. 3d 1460, 250 Cal. Rptr. 832 (1988). Rice was requested to submit to a chemical test after an off-duty officer observed him driving erratically; Rice was standing beside his vehicle when the officer requesting the test arrived. Rice told the officer he was not driving and refused to submit to the test. At the administrative hearing concerning license revocation, Rice introduced no evidence contradicting the officer's testimony that he was seen driving the car. 203 Cal. App. 3d at 1462. The court disagreed with the rationale of *Medina*. The court pointed out that among the issues which must be decided by the administrative hearing referee, there is no requirement that the referee determine that the person was actually driving the car. The court stated:

"The statute is unambiguous and states that upon a lawful arrest for driving under the influence, a person must submit to one of the chemical tests administered at the direction of a police officer. Upon failure to submit, the person shall suffer loss of his driving privileges. This interpretation is consistent with the very important purpose of the statute to keep persons who are reasonably suspected of operating a vehicle while intoxicated off the road and to secure the civil cooperation of all persons privileged to drive by providing objective proof of their sobriety when suspected of driving under the influence. [Citations omitted.] Other than to cite to *Medina*, plaintiff makes no showing why we should disregard the plain language and engraft an additional requirement onto the statute. In light of our interpretation of the statute, we decline to follow *Medina*." 203 Cal. App. 3d at 1466.

The same division of the California Court of Appeal that decided *Medina* later disagreed with *Rice* and reaffirmed *Medina*. In *Jackson v. Pierce*, 224 Cal. App. 3d 964, 274 Cal. Rptr. 212 (1990), Jackson identified herself as the driver of a vehicle at the time an accident occurred. She refused to take a requested chemical test. Jackson later testified that her boyfriend was driving the car at the time of the accident and that she had grabbed the wheel, which led to a struggle and then the accident. Jackson also presented a letter signed by her boyfriend supporting her testimony. 224 Cal. App. 3d at 966-67. Evaluating both *Medina* and *Rice*, the panel concluded that the foundational provision of the implied consent law (" '[a]ny person who drives a motor vehicle

is deemed to have given his or her consent to . . . testing' ")
reveals that the act of driving is what activates the testing pro-
cedures. 224 Cal. App. 3d at 970.

"[T]he consent is implied by law from the act of driving. If the person was not
driving, he or she did not impliedly agree to submit to the test and, under the
statute, has every right to refuse to take it. A person who has no obligation to
comply with a law should not be punished for failing to comply with it." 224
Cal. App. 3d at 971.

Furthmyer also points to other jurisdictions that reach similar
conclusions that there must be a determination whether the per-
son was actually driving or operating or in actual physical control
of a vehicle. In Alaska, where refusal to submit to a chemical test
is a criminal offense, the prosecution must prove the person was
driving or in actual control of a vehicle. See *Patterson v. Mu-
nicipality of Anchorage*, 815 P.2d 390 (Alaska App. 1991). An
Illinois court has held that "reasonable grounds" are sufficient to
request a chemical test but insufficient to support a suspension
for license suspension if it is later proven that the person was not
driving or in actual physical control of a vehicle. The court in-
dicated that the burden is on the alleged driver at the hearing
to rescind a suspension to prove that he or she was not driving.
*People v. Wireman*, 181 Ill. App. 3d 385, 536 N.E.2d 1346 (1989).
Likewise, the Iowa Supreme Court has held that the burden is
on a licensee to show compliance with the implied consent law,
including showing compliance by proving nondriving of a vehicle.
*Furry v. Iowa Dept. of Transp., MVD*, 464 N.W.2d 869, 872
(Iowa 1991). The Minnesota Court of Appeals has also required
proof that the person was in actual physical control before the
implied consent sanctions apply. Bona fide passengers are pre-
sumed not to be in actual physical control of a vehicle, and the
burden is on the suspendee to prove he or she was a passenger.
*Hansen v. Commissioner of Public Safety*, 478 N.W.2d 229, 231-
32 (Minn. App. 1991).

KDR argues that proof the person was operating or attempting
to operate a vehicle is not necessary to impose a license suspen-
sion for refusing to submit to a requested chemical test. KDR
points out that K.S.A. 8-1002(h)(1) limits the issues which may

be considered at refusal hearings. That statute does not make whether the person was in fact operating or attempting to operate a vehicle an issue. Moreover, KDR points out that the legislature in K.S.A. 8-1002(h)(2) did make whether the person was operating a vehicle a requisite for a license suspension when a person fails a chemical test. Although the legislature made operation an issue in failure cases, the legislature has never made operation or attempted operation an issue in refusal cases.

KDR points out several Kansas Court of Appeals decisions which limit the issues which may be considered at an administrative hearing to those designated in K.S.A. 8-1002(h). See *Schulz v. Kansas Dept. of Revenue*, 19 Kan. App. 2d 665, 877 P.2d 1 (1993) (noncompliance with certification requirements is not an issue which can be raised at the administrative hearing); *Woodhead v. Kansas Dept. of Revenue*, 13 Kan. App. 2d 145, 765 P.2d 167 (1988) (reasonableness of refusal is not a defense and is not listed among issues which may be considered at administrative hearing). KDR acknowledges that *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, 349, 853 P.2d 69, *rev. denied* 253 Kan. 856 (1993), permitted consideration of an issue involving improper service of the suspension notice though that issue is not listed in K.S.A. 8-1002(h)(1), but KDR reasons (as did the *Anderson* court) that K.S.A. 8-1002(h)(1) governs only substantive issues and that improper notice is a procedural issue, whereas the issue raised by Furthmyer is a substantive one.

KDR distinguishes the cases from other jurisdictions relied upon by Furthmyer, arguing that the implied consent statutes of those jurisdictions differ from the Kansas statutes. Instead, KDR points out that in addition to the California court in *Rice*, 203 Cal. App. 3d 1460, courts in Pennsylvania and Vermont have rejected arguments that proof of operation of a vehicle is required before the sanctions of the implied consent law may be imposed; all that is required for imposition of the sanction is reasonable grounds, even if it is later shown the person was not driving. See *White v. Commonwealth*, 59 Pa. Commw. 156, 428 A.2d 1044 (1981); *Bureau of Traffic Safety v. Dreisbach*, 26 Pa. Commw. 201, 363 A.2d 870 (1976); *Shaw v. Vermont District Court*, 152

Vt. 1, 563 A.2d 636 (1989). Just as KDR distinguishes the cases cited by Furthmyer based on the language of the statutes in those jurisdictions, Furthmyer distinguishes the cases cited by KDR on the same basis.

The question here is one of legislative intent. The Kansas Legislature has been faced with the problem of a mounting number of deaths and injuries caused by persons driving while under the influence of alcohol or drugs. The legislature has responded through the years by raising the drinking age; lowering the blood alcohol concentration requirement; increasing the penalty, including mandatory jail time, for repeat offenders; and passing new and different laws concerning suspension and revocation of driver's licenses.

"The purpose of the implied consent law (K.S.A. 8-1001) is to coerce submission to chemical testing through the threat of the statutory penalties of license revocation and the admission into evidence in a DUI proceeding of the fact of refusal." *State v. Bristor*, 236 Kan. 313, Syl. ¶ 3, 691 P.2d 1 (1984).

When dealing with the request for a chemical test, the legislature used mandatory language ("shall"), directing a law enforcement officer to request a person to submit to a test or tests if the officer "has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs." K.S.A. 8-1001(b). The same wording must be certified to by a law enforcement officer before the officer serves a notice of suspension for refusal to take a test or tests. K.S.A. 8-1002(a) and (c). K.S.A. 8-1002(h)(1) limits the issues which may be considered in refusal cases. The person may request a hearing on the refusal, but "the scope of the hearing *shall* be limited to whether: (A) A law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle under the influence of alcohol or drugs." (Emphasis added.) K.S.A. 8-1002(h)(1). There is no provision in this statute permitting consideration of whether the person was operating or attempting to operate a vehicle. Conversely, K.S.A. 8-1002(h)(2) does permit consideration of whether the person was operating a vehicle in chemical test failure cases.

Had the legislature intended to require a finding that the person was operating or attempting to operate a vehicle before sanctions for refusing a requested chemical test could be imposed, the legislature has clearly demonstrated a knowledge of how it could have been done, and the legislature could have included that issue in K.S.A. 8-1002(h)(1).

From the language of the statutes involved, we conclude the legislature intended that when a blood alcohol test is refused, the KDR need only prove a law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs and not that the person had actually operated or attempted to operate the motor vehicle. The trial court applied the correct standard.

The Court of Appeals is reversed, and the trial court is affirmed. All other arguments made by the parties are moot.